**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| CHARLES COPLEY, *et al.*, | ) | |
| *Individually and on behalf of all others* | ) | |
| *similarly situated*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00575-FB-PK |
| BACTOLAC PHARMACEUTICAL, | ) | |
| INC., *et al.*, | ) | *Consolidated with* |
| | ) | |
| Defendants. | ) | No. 2:20-cv-01338-FB-PK |
| | ) | |

---

| | |
|---|---|
| JEFFREY FARIS, *et al.*, | ) |
| *Individually and on behalf of all others* | ) |
| *similarly situated*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BACTOLAC PHARMACEUTICAL, | ) |
| INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**STATEMENT OF INTEREST OF THE UNITED STATES**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ..................................................................................................................... 1

    I.             Appearance of the United States........................................................................... 1

    II.           Coupon Settlements and CAFA ........................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 3

ARGUMENT ................................................................................................................................... 6

    I.             The Proposed Settlement Is Unfair and Unreasonable Because It Directs Most of Settlement's Value to Class Counsel Instead of Class Members ...................................................... 6

    II.           The Proposed Settlement Also Is Unfair and Unreasonable Because Named Plaintiffs Receive Much Larger Benefits Than Unnamed Class Members ................................. 10

    III.         At a Minimum, the Court Should Defer Ruling on Attorneys' Fee Request Until the End of the Redemption Period ................................................................................ 11

CONCLUSION ............................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Berkson v. Gogo LLC*,
   147 F. Supp. 3d 123 (E.D.N.Y. 2015) ...................................................................*passim*

*Bowling v. Pfizer, Inc.*,
   102 F.3d 777 (6th Cir. 1996) .................................................................................. 14

*Bryant v. Potbelly Sandwich Works, LLC*,
   No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) .............................. 13

*Buchanan v. Luyando*,
   No. 21-cv-1723, 2021 WL 6425261 (2d Cir. Oct. 8, 2021) ..................................................... 4

*Buchanan v. Pay-O-Matic Check Cashing Corp.*,
   No. 18-cv-885, 2021 WL 3008480 (E.D.N.Y. June 15, 2021).................................................. 4

*Davis v. Cole Haan, Inc.*,
   No. 11-cv-01826-JSW, 2015 WL 7015328 (N.D. Cal. Nov. 12, 2015)........................................ 12

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 ...................................................................................... 13, 14

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ................................................................................. 7

*Galloway v. Kan. City Landsmen, LLC*,
   833 F.3d 969 (8th Cir. 2016) ................................................................................. 12

*Gascho v. Glob. Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) ................................................................................. 14

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .................................................................................. 12

*In re Easysaver Rewards Litig.*,
   906 F.3d 747 (9th Cir. 2018) ............................................................................... 9, 14

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) ........................................................................... 2, 12, 14

*Marino v. COACH, Inc.*,
   No. 1:16-cv-03773-VEC (OTW), 2021 WL 827647 (S.D.N.Y. Mar. 3, 2021) ................................. 7

*Martina v. L.A. Fitness Int'l, LLC,*
   No. 2:12-cv-2063, 2013 WL 5567157 (D.N.J. Oct. 8, 2013)................................. 6, 9, 12

*Parker v. Time Warner Entertainment Co.,*
   239 F.R.D. 318 (E.D.N.Y. 2007)......................................................................... 6

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
   463 F.3d 646 (7th Cir. 2006) ................................................................................ 7

*Vassalle v. Midland Funding LLC,*
   708 F.3d 747 (6th Cir. 2013) ............................................................................. 10, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) ................................................................................. 13

*Wesley v. Spear, Leeds & Kellogg,*
   711 F. Supp. 713 (E.D.N.Y. 1989) ..................................................................... 10

*Wilson v. DirectBuy, Inc.,*
   No. 3:09-CV-590 (JCH), 2011 WL 2050537 (D. Conn. May 16, 2011) .................................... 6, 7

## <u>STATUTES</u>

15 U.S.C. § 2301 ................................................................................................. 3

28 U.S.C. § 517 .................................................................................................. 1

28 U.S.C. § 1711 ................................................................................................ 1

28 U.S.C. § 1712 ................................................................................................ 2

28 U.S.C. § 1712(a) ........................................................................................ 11, 14

28 U.S.C. § 1712(b) ........................................................................................... 12

28 U.S.C. § 1712(d) ........................................................................................... 14

28 U.S.C. § 1712(e) ............................................................................................. 3

28 U.S.C. § 1715 ................................................................................................ 1

28 U.S.C. § 1715(b) ............................................................................................. 4

28 U.S.C. § 1715(f) ............................................................................................. 1

**INTRODUCTION**

Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711 *et seq.* ("CAFA"), the United States files this Statement of Interest recommending rejection of the proposed settlement as currently structured. The United States, by and through the Department of Justice's Consumer Protection Branch and the United States Attorney's Office for the Eastern District of New York, has reviewed the proposed coupon settlement in this case and believes that it is not fair or equitable. The requested settlement would allow nearly $1 million in fees to class counsel without objection and $5,000 to each of 14 named plaintiffs. The approximately 189,000 unnamed class members, in contrast, would receive only low-value coupons with restrictions or some miniscule share of a comparatively small $100,000 cash fund for the release of their claims. CAFA requires careful scrutiny of this sort of coupon settlement, where class members receive little, if any, actual cash value.

**LEGAL STANDARD**

**I.     Appearance of the United States**

The Attorney General may send "any officer of the Department of Justice . . . to any State or district in the United States to attend to the interests of the United States in a suit pending in a court in the United States."  28 U.S.C. § 517.  CAFA further requires class action defendants to notify the Attorney General and state officials of proposed class action settlements. 28 U.S.C. § 1715.  While the CAFA notice provision, 28 U.S.C. § 1715(f), does not grant any specific authority to, or impose any obligation on, federal or state officials, the statute's legislative history shows that Congress intended the notice provision to enable public officials to "voice concerns if they believe that the class action settlement is not in the best interest of their citizens." CAFA, S. Rep. 109-14 (2005) ("Senate Report") at 28.  Congress expected that CAFA notifications would "provide a check against inequitable settlements" and "deter collusion between class counsel and defendants to craft

1

settlements that do not benefit injured parties." *Id.* at 33–35. The United States thus offers its views here on the unfairness of the proposed settlement.

## II.    Coupon Settlements and CAFA

Congress enacted CAFA to provide adequate notice of class actions to parties, promote consistent application of governing law, and establish a mechanism for class action settlements to provide "meaningful recovery to the class members" as opposed to "simply [a] transfer [of] money from corporations to class counsel." Senate Report at 4–6; *accord Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 132 (E.D.N.Y. 2015) (Weinstein, J.). In particular, Congress found that certain past class actions had harmed class members by providing insignificant recoveries to the class while leading to large attorneys' fees awards. *See Berkson*, 147 F. Supp. 3d at 132. Along with reforms that enabled parties to more easily bring class action suits to federal court, CAFA included a "Consumer Class Action Bill of Rights" intended "to help ensure that class actions do not hurt their intended beneficiaries[,] . . . [to] address a number of common abuses[,] . . . and to encourage greater judicial scrutiny of proposed class action settlements." Senate Report at 30.

The CAFA Bill of Rights reflects particular congressional concern with "coupon settlements," which provide eligible class members with coupons or vouchers for future purchases from the defendant. *Id.* at 20. Such settlements often provide class members with awards that have little practical value. *See, e.g.*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). Coupon settlements often fail to provide meaningful compensation to most class members and fail to disgorge ill-gotten gains from defendants, and they may require class members "to do future business with the defendant in order to receive compensation." *Berkson*, 147 F. Supp. 3d at 132 (quoting Christopher Leslie, *The Need to Study Coupon Settlements in Class Action Litigation*, 18 Geo. J. Legal Ethics 1395, 1396-97 (2005)). CAFA therefore expressly sets forth guardrails governing coupon settlements. 28 U.S.C. § 1712. The relevant provisions mandate "judicial scrutiny of coupon

settlements" in terms that reference the standard Rule 23(e) inquiry and emphasize that approval of such a settlement requires a hearing and written findings that the settlement is actually fair, reasonable, and adequate. 28 U.S.C. § 1712(e).

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs allege that Defendants Bactolac Pharmaceutical, Inc., NaturMed, Inc., d/b/a Institute for Vibrant Living, LLC, and its successor Independent Vital Life, LLC ("IVL2") manufactured, blended, and sold a dietary supplement drink available in two flavors called All Day Energy Greens and All Day Energy Greens Fruity ("ADEG"), that was marketed as improving digestion. Am. Class Action Compl. (Dkt. No. 57) at ¶¶ 2-4.

On January 26, 2018, Plaintiffs filed a class action lawsuit against Defendants alleging that Defendants made false representations about ADEG in their marketing and sold an adulterated product in 2014 and 2015 that contained ingredients not listed on the product label. *Id.* at ¶ 42. The amended complaint alleges violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, and various state consumer fraud and warranty laws, and it asserts common law claims including fraudulent concealment and negligent misrepresentation.

On January 10, 2022, Plaintiffs' counsel moved for preliminary approval of a proposed class settlement, Notice of Mot. for Prelim. Approval (Dkt. No. 247) at 1, and filed a proposed settlement agreement and release, *id.* at Ex. 2 ("Settlement"). The Court granted preliminary approval of the proposed settlement that same day. Order (Dkt. No. 248). On May 16, 2022, Plaintiffs' counsel moved for final approval of the class settlement, certification of the settlement class, and approval of attorneys' fees, expenses, and service awards. Pls.' Notice of Mot. for Final Approval (Dkt. No. 251). A Fairness Hearing is scheduled for May 19, 2022, at 3:00 p.m. *Id.* at ¶ 49.[1]

---

[1] CAFA provides that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate

The parties estimate that approximately 189,000 class members purchased at least one canister of ADEG from recalled lots of the product. First Bilsborrow Decl. (Dkt. No. 247-1) at ¶ 26; Pls.' Mem. of Law in Support of Final Approval (Pls.' Mem.) (Dkt. No. 254) at 1. The proposed settlement provides these unnamed class members two options for recovery. First, class members may choose a $10 "settlement credit" if they "timely submit[] a Claim Form and elect[] to receive this benefit." Settlement at § 4.a. These credits, called "Coupon Savings Bucks," provide $10 toward any purchase from IVL2, can be used only once, and expire in three years. Settlement at § 4.a. An ADEG canister costs $39.95, and there do not appear to be any products on the IVL2 online store that sell for $10 or less. *See* independentvitallife.com/collections (last visited May 12, 2022). Therefore, class members would be required to spend additional money of their own to purchase replacement ADEG, or anything else, even with a coupon.

The second part of the proposed settlement is a $1,725,000 cash "Settlement Fund," only $100,000 of which will be used to pay $5 in cash to class members who opt for cash rather than a coupon. If more than 20,000 class members seek the cash payment, the $100,000 will be distributed on a *pro rata* basis. *Id*. at § 4.b. Extra money remaining in the account after paying $5 to the cash claimants will be distributed *pro rata* to the claimants who chose the cash option. *Id*. The remainder of the Settlement Fund would go to a requested attorneys' fee award of $992,421; class counsel's costs of $210,136.36; Service Awards of $5,000 for each of the 14 named Plaintiffs; and various

---

Federal official, a notice of the proposed settlement." 28 U.S.C. § 1715(b); see *Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-cv-885, 2021 WL 3008480, at *2 (E.D.N.Y. June 15, 2021) (Block, J.) (expressly noting CAFA compliance with reference to the notice provision before approving settlement), appeal withdrawn sub nom. *Buchanan v. Luyando*, No. 21-cv-1723, 2021 WL 6425261 (2d Cir. Oct. 8, 2021). The appropriate Federal official means the Attorney General of the United States. *Id*. § 1715(a)(1). In this case, the Attorney General received notice mistakenly addressed to the Office of the Attorney General for the District of Columbia. Exhibit 1 (letter to K. Racine, dated Jan. 20, 2022 at 1, 4). This statement of interest was filed as soon as possible after notice was received by the relevant Department component.

administrative costs. *See* Pls.' Notice (Dkt. No. 251); Settlement at §§ 2.b, 4.b & 5; First Bilsborrow Decl. (Dkt. No. 247-1) at ¶ 34.[2]

Under the proposed settlement, a putative class member has to submit a claim form to the Settlement Administrator within 100 days of receiving notice. Settlement at ¶¶ 1(s), 3. Class members who submit a claim form but do not choose between a coupon or and cash will receive the $10 credit. *Id*. Class members who submit a claim release all further claims against Defendants. *Id.* at ¶ 6(b). Class members who do not submit the claim form or opt out of the settlement will receive nothing. Settlement at ¶ 11.a; Long Form Class Notice (Dkt. No. 247-2) at "If You Do Nothing".

The proposed settlement permits class counsel to apply for an attorneys' fee award of "up to one-third of the Total Settlement Value," plus costs up to $210,136.30. Settlement at ¶ 5(a). Defendants agree not to oppose this fee and cost request. *Id*. The "Total Settlement Value" is defined in the proposed settlement as the $1,725,000 Total Settlement Payment, "plus the value of the Settlement Credits made available" to eligible class members—*i.e.*, the value of the offered coupons. *Id*. at ¶¶ 1(iii) & (jjj). Plaintiffs' counsel assert that the total value of the Settlement Credits equals $1,889,420 (based on an assumption that almost every class member will request and redeem a coupon, *see* Pls.' Mem. of Law in Support of Mot. for Prelim. Approval (Dkt. No. 247-5) at 1), making the Total Settlement Value $3,621,420. First Bilsborrow Decl. (Dkt. No. 247-1) at ¶ 25.[3]

---

[2] Subtracting everything but administrative costs from the $1,725,000 funds leaves $137,736.70, to cover costs that the proposed settlement estimates could be as much as $325,000. Settlement at § 5.c-d. The parties did not explain how the discrepancy between the amount allocated and the amount needed can be reconciled. According to the settlement claims administrator, the ultimate administrative costs are $247,074. Madden Decl. (Dkt. 253) at ¶ 24.

[3] One class member filed and objection with the Court. *See* Dkt. # 249-1. The objector states that he purchased six canisters of ADEG and became sick as a result, leading him to file a suit in the District of Maryland and obtain a judgment against Defendants for $57,313, which he seeks to have paid out of the Settlement monies in this action. *Id*. The small number of objections and opt-outs should not be seen as a general approval of the settlement by the class. To the contrary, it is rare to see significant class response regardless of the fairness of the proposed settlement. *See Martina v. L.A. Fitness Int'l,*

The deadline for class members to file a claim is May 20, 2022. To date, 10,373 class members out of the 189,000 total class members have filed a claim (5.4 percent of the class), and one class member has opted out of the settlement. Exhibit 2 (Bilsborrow email chain dated May 17, 2022); Madden Decl. at ¶¶ 16 & 22. The majority of these claimants (6,136 claimants, or 3.2 percent of the class) requested the cash payment, while 2,539 claimants (or 1.3 percent of the class) failed to make any selection and thus will receive coupons under the default provisions. Only 1,698 claimants (or less than one percent of the class) requested coupons.[4] Madden Decl. (Dkt. No. 253) at ¶ 18; Exhibit 2. Plaintiffs' counsel have requested an attorneys' fee award of $992,421 using the lodestar method. *Id*. Combined with costs, that request will result in a total requested award to counsel of $1,202,557.30. That amount is 12 times greater than the $100,000 fund reserved for cash payments to unnamed class members.

## ARGUMENT

### I.   The Proposed Settlement Is Unfair and Unreasonable Because It Directs Most of Settlement's Value to Class Counsel Instead of Class Members

The proponents of a proposed settlement bear the burden of proving that it is fair, adequate, and reasonable.  *Parker v. Time Warner Entertainment Co.*, 239 F.R.D. 318, 336 (E.D.N.Y. 2007)

---

*LLC*, No. 2:12-cv-2063, 2013 WL 5567157, at *6 (D.N.J. Oct. 8, 2013) (unpublished) (fact that there were "no objections" and "only one opt out" was cancelled out by fact that less than 3 percent of the class claimed relief, so the class' reaction "weigh[ed] neither for nor against approval of the settlement"); *Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590 (JCH), 2011 WL 2050537, at *8 (D. Conn. May 16, 2011) (noting that a "low response rate is the norm and should not be overconstrued" and concluding that class silence does not warrant "an inference of approval"). Indeed, CAFA was enacted in part to address the fact that class members may not understand confusing settlement notices. *See* Sen. Rep. at 4.

[4] At one point, Plaintiffs erroneously state that "over 6,000 of these claimants have elected to receive Settlement Credit, while over 4,000 have elected to receive an Alternate Payment. Pls.' Mem. (Dkt. No. 254) at 2. Later, however, they note that "the Claims Administrator reports that 4,237 Claimants have selected to receive Settlement Credit as compensation versus 6,136 who have opted for an Alternative Payment." *Id*. at 7; *accord* Madden Decl. (Dtk. No. 253) at ¶ 18; Exhibit 2. But Plaintiffs' counsel has since clarified that 2,539 of the 4,237 claimants who will receive coupons actually failed to select between the two options and so received coupons.  Exhibit 2.

6

(Glasser, J.).  This proposed settlement is not fair or reasonable. The lion's share of the proposed settlement's purported value for consumer class members consists of coupons that law and experience show to have little or no value. At the same time, under the proposed settlement, class counsel are seeking fees and costs of approximately $1.2 million. The Court should reject the proposed settlement because of this disparity.

Reliance on coupons to compensate class members is "a warning sign of a questionable settlement." *Eubank v. Pella Corp.*, 753 F.3d 718, 725 (7th Cir. 2014). Coupon settlements are generally "disfavored" and "have been widely criticized," including in Congressional commentary on CAFA. *Berkson*, 147 F. Supp. 3d at 131 & 132.[5] Coupons are valuable only if class members choose to engage in additional transactions with the defendant that purportedly harmed them, a fact that creates the risk that "some percentage of the [coupons] claimed by class members will never be used and, as a result, will not constitute a cost to [defendant]."  *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006); *see Marino v. COACH, Inc*., No. 1:16-cv-03773-VEC (OTW), 2021 WL 827647, at *3 (S.D.N.Y. Mar. 3, 2021) (finding it highly unlikely that all of the vouchers in proposed class action settlement would be used before they expired after one year).  Courts thus may properly reject such settlements, especially without more information about the coupon's true monetary value. *See, e.g.*, *Wilson*, 2011 WL 2050537, at *15 (rejecting a settlement that provided class members with in kind benefit of continued membership in discount shopping club where the value of the membership was overstated and valueless to half of the class).

The Third Circuit's opinion in *In re General Motors Corp. Pick-Up Truck Fuel Tank Products*

---

[5] The Federal Judicial Center's class action guide echoes the concerns expressed in case law over coupon settlements, noting that they are a "hot button indicator[]" of a settlement term that "show[s] [its] potential unfairness on [its] face." Hon. Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed. 2010) ("Rothstein et al") at 17. Even Plaintiffs' counsel concedes that coupon class action settlements warrant "heightened scrutiny" under CAFA.  Pls.' Mem. (Dkt. No. 254) at 16.

*Liability Litigation* explains the problems inherent in coupon settlements. In that case, a class of more than six million consumers sued General Motors over allegedly defective pickups. 55 F.3d 768, 777 (3d Cir. 1995). The company agreed to settle the lawsuit by offering coupons toward the purchase of new General Motors vehicles. *Id.* at 780. The district court approved the settlement, but the Third Circuit reversed, noting that the district court "ignored the fact that the coupons provided no cash value and made no provision for repairing the allegedly life-threatening defect." *Id.* at 806-07. The Third Circuit further agreed with objectors that the district court had "overvalued the settlement" and held that "the proffered settlement was, in reality, a sophisticated [General Motors] marketing program," because some consumers would feel "beholden to use the certificates" to buy more products from defendants, which would result in a "tremendous sales bonanza" for General Motors. *Id.* at 807–08; *see also* Senate Report at 16 (describing how some "coupons are a promotional opportunity and not a penalty").

The restrictive nature of coupons calls for special consideration when assessing whether settlements structured around them are fair, adequate, and reasonable. Factors to consider include: (1) whether the coupons are transferable to other consumers, (2) whether a secondary market exists where they could be converted to cash, (3) whether the coupon compares favorably with other bargains generally available, and (4) whether it is likely that class members would actually redeem the coupons. *See* Rothstein et al. at 17–18.[6] All of these factors suggest the coupons proposed in this case hold only illusory value.

The "credits" contemplated in the proposed settlement are "coupons" within the meaning of CAFA. While CAFA does not define "coupon," the legislative history supports the commonsense conclusion that a coupon is a discount on products or services offered by the defendant. *See* Senate

---

[6] Available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf.

Report at 15 (citing with disapproval class action settlements in state courts where "class members receive nothing more than promotional coupons to purchase more products from the defendants"). In the class action settlement setting, this District has defined a coupon as a "'discount on another product or service offered by the defendant in the lawsuit, with the critical factor being that the nonpecuniary benefit forces future business with the defendant.'" *Berkson*, 147 F. Supp. 3d at 131 (quoting 4 William B. Rubenstein, *Newberg on Class Actions* § 12:11 (5th ed. 2015)).

The parties here acknowledge the coupon nature of the contemplated "credits" by calling them "Coupon Savings Bucks" and printing them in a form that looks like a typical grocery store coupon. Settlement (Dkt. No. 247-2) at Ex. D. But the resemblance to coupons goes well beyond name and appearance. The coupons offer no cash redemption value, and the parties point to no secondary market where class members could readily convert coupons to cash. Moreover, unlike cash, the coupons expire after three years. Class members also must spend additional money above the coupon's value to purchase a replacement of the product at issue. They must spend that money with the same defendants who allegedly caused the very harm that is the subject of the complaint. *See In re Easysaver Rewards Litig.*, 906 F.3d 747, 756 (9th Cir. 2018) (finding that $20 credits for the purchase of items from defendant on its website amounted to coupons in class action settlement context); *Berkson*, 147 F. Supp. 3d at 133 (holding that promotional codes allowing limited free use of defendant's services "have the scent and flavor of coupons"); *Martina*, 2013 WL 5567157, at *4 (finding a $100 credit towards a gym membership to be a coupon because "[i]t is a credit which requires class members to spend money in order to realize the benefit").[7]

The class response rate thus far in this case also indicates that the offered coupons and the

---

[7] The value of the coupons is further reduced by the work claimants must put in to get them. Even though Defendants apparently already have a comprehensive list of class members, coupon claimants must also take time to affirmatively submit claim materials to receive their "benefit." Settlement at ¶ 4(a).

$100,000 Alternative Settlement Fund do not represent fair or reasonable value to class members when compared to the sizable attorneys' fees that Plaintiffs' counsel are seeking. The vast majority of class members here have not attempted to obtain the relief on offer, and a majority of those who did submit a claim unsurprisingly have opted for cash payments instead of coupons (indeed, as noted, less than one percent of class members have claimed coupons and, as discussed below, only a portion of those class members are likely to redeem their claimed coupons). *See* Madden Decl. (Dkt. No. 253) at ¶ 18; Exhibit 2. Moreover, even those class members who opted for cash will receive only a very small portion of the $100,000 Alternative Settlement Fund, which is far less than the $1.2 million in fees and costs that class counsel seeks. The proposed settlement thus falls short of offering class members a fair or reasonable share of the actual value secured through release of their claims. The Court accordingly should reject it.

## II.    The Proposed Settlement Also Is Unfair and Unreasonable Because Named Plaintiffs Receive Much Larger Benefits Than Unnamed Class Members

Where a class action settlement "gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members[,] . . . such inequities in treatment make a settlement unfair." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013). Further, where named plaintiffs "receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Wesley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989) (Nickerson, J.). When viewed with the true "total settlement value" in mind, the proposed settlement here features a significant disparity between the benefits received by the named class representatives and the benefits offered to everyone else.

The proposed settlement agreement states that each named plaintiff will receive a $5,000 payment "for his or her role as a class representative," Settlement at ¶ 5.b, and for his or her

participation in responding to discovery and sitting for depositions. Pls. Mem. (Dkt. 254) at 34; First Bilsborrow Decl. (Dkt. No. 247-1) at ¶ 34. But, as in *Berkson*, "[i]t does not appear that named plaintiffs risked any extraordinary harm or lent any special expertise to the action." 147 F. Supp. 3d at 134. In contrast to the amount to be received by named plaintiffs, the vast majority of unnamed class members who file a claim will receive coupons of little value or a small share of the $100,000 Alternative Settlement Fund.

The additional remuneration allotted to the named plaintiffs here presents a similar sort of preferential treatment to what the Sixth Circuit rejected in *Vassalle*. There, the Sixth Circuit compared the $17.38 received by unnamed class members with the value of one named plaintiff's forgiven debt of $4,516.57 and rejected a settlement as "unfair to the unnamed class members" because the "$17.38 payment . . . [w]as *de minimis*" in comparison. *Vassalle*, 708 F.3d at 756. Similarly, in *Ramirez v. Ricoh Americas Corp.*, the fact that the named plaintiff sought $20,000—or 5.71 percent of the settlement fund—as his service award was one of several factors that led the court to refuse to approve the proffered class action settlement. No. 13-CV-9073 (KNF), 2015 WL 413305, at *5 (S.D.N.Y. Jan. 30, 2015) (unpublished).

Given the disparity between what named class members will receive compared to unnamed class members, the Court here similarly should decline final approval of the settlement.

## III.   At a Minimum, the Court Should Defer Ruling on Attorneys' Fee Request Until the End of the Redemption Period

Even if the Court accepts the proposed settlement, it should defer ruling on class counsels' request for fees until it can make an informed determination about the coupon redemption rate and assess fees in light of actual value afforded to class members.

Where attorney's fees are based on a contingency rate, CAFA requires "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons [to be] based on

the value to class members of the coupons that are *redeemed*." 28 U.S.C. § 1712(a) (emphasis added).
Even where attorneys seek a *non-contingent* or "lodestar" cash award in a coupon settlement, as
counsel do here, a court should "carefully scrutinize" the agreement and "refuse to allow attorneys to
receive fees based on an inflated or arbitrary evaluation of the benefits to be delivered to class
members." Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2008).  CAFA
makes clear that such fee awards are subject to the Court's approval. *See* 28 U.S.C. § 1712(b). As
courts in other circuits have found, lodestar calculations "may produce an unreasonably high award"
in coupon settlements where "the value of redeemed coupons is minimal." *Galloway v. Kan. City
Landsmen, LLC*, 833 F.3d 969, 975 (8th Cir. 2016); *see also In re HP Inkjet Printer Litig.*, 716 F.3d
at 1179 ("Indeed, if the legislative history of CAFA clarifies one thing, it is this: the attorney's fees
provisions of § 1712 are intended to put an end to the 'inequities' that arise when class counsel receive
attorney's fees that are grossly disproportionate to the actual value of the coupon relief obtained for
the class.") (citing Senate Report at 29–32); *see also Berkson*, 147 F. Supp. at 134 (citing *In re Inkjet
Printer Litig.* with approval and ordering that class counsel's requested $750,000 fee award in coupon
settlement must be justified at the hearing based on reasonableness). The "degree of success
obtained" by class counsel is the most critical factor in evaluating class action fees. *Galloway*, 833
F.3d at 975. Indeed, as Plaintiffs correctly point out, the "requested fee in relation to the settlement"
is one of the factors courts in this circuit consider when evaluating a lodestar award under *Goldberger
v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). *See* Pls. Mem. (Dkt. No. 254) at 30.

The preference for requiring data on coupon redemption before awarding attorneys' fees in
coupon settlements stems from the fact that coupon redemption rates are almost always very low. *See,
e.g.*, *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 971 (8th Cir. 2016) (redemption rate of
0.045 percent); *Davis v. Cole Haan, Inc.*, No. 11-cv-01826-JSW, 2015 WL 7015328, at *2 (N.D. Cal.
Nov. 12, 2015) (noting that 336 of 13,918 class members redeemed voucher, or 2.4 percent); *Martina*,

2013 WL 5567157, at *2 (only 3.6 percent of the class redeemed their in-kind benefits, including vouchers and credits); James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 Geo. J. Legal Ethics 1443, 1445, 1448 (2005) (explaining that coupon redemption rates in settlements are "tiny" and "mirror the annual corporate issued promotional coupon redemption rates of 1-3 percent). "Determining the precise value to the class of [a] coupon settlement . . . [thus] calls for hard data on class members' redemption of the coupons." Rothstein *et al*. at 18.

In this case, as noted above, Plaintiffs' counsel seek $992,421 in fees plus costs using the lodestar method. *See* Pls.' Notice of Mot. for Final Approval (Dkt. No. 251). As Plaintiffs' counsel concede, their fee request equates to 27.4 percent of the Total Settlement Value if one assumes—as the proposed settlement and Plaintiffs' counsel do—an almost 100 percent claim and redemption rate of the available coupons. *See* Pls. Mem. (Dkt. No. 254) at 1, 14 (crediting total settlement value as $3,613,970, which improbably includes a $1,888,970 valuation of settlement coupons). But it already is clear from available information that the final claim rate in this case will be very low, since only 5.4 percent of class members have submitted claims thus far, and the claims window closes on May 20, 2022. The coupon redemption rate will be even lower, *see supra* at 12-13, and a negligible redemption rate is not compatible with the sort of pure lodestar fee calculation Plaintiffs' counsel advocates here. *See Galloway*, 833 F.3d at 975 ("[I]f the value of redeemed coupons is minimal, as in this case, a fee award based on an *unadjusted* lodestar calculation may produce an unreasonably high award") (emphasis added).

Plaintiffs' counsel admit that this Court has discretion to determine compensation using either (1) the percentage of the fund method, which would assess the attorneys' fee award based on the value of the coupons redeemed, or (2) the lodestar method. Pls.' Mem. (Dkt. No. 254) at 28-29. Counsel then argue that the lodestar approach is the most appropriate. *Id*. But while a lodestar calculation may serve as a useful cross-check, courts in the Second Circuit "prefer to award fees as a

13

percentage of the fund." *Bryant v. Potbelly Sandwich Works, LLC*, No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804, at * 5 (S.D.N.Y. Feb. 4, 2020); *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005); *Dupler v. Costco Wholesale Corp*., 705 F. Supp. 2d 231, 242. That is particularly appropriate here, given CAFA's general requirement that class action settlements based on coupons consider "the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a); *see In re HP Inkjet Printer Litig.*, 716 F.3d at 1183-85 (finding that use of the lodestar method was not permissible in coupon class settlement).

Accordingly, if the Court allows the proposed settlement to proceed, it should require, as part of the attorneys' fees determination, that the parties provide information regarding the actual value to class members of *redeemed* coupons. *See In re Easysaver*, 906 F.3d at 756 ("CAFA prevents the settling parties from valuing coupons at face value without accounting for their redemption rate"); *Parker*, 631 F. Supp.2d at 266 ("Under CAFA, any fund against which attorney fees are measured or assessed that is based on the underlying value of coupons may only include those coupons that are redeemed"); *see also Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 281-82 (6th Cir. 2016) (recommending "[a] percentage of the fund cross-check" even for a non-contingency-based fee request); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (same);  Manual for Complex Litigation at § 21.71 & n.1006 ("[The] single most important action that judges can take to support the public goals of class action litigation is to reward class action attorneys only for lawsuits that actually accomplish something of value to class members and society.") (quoting Deborah R. Hensler et al., *Class Action Dilemmas: Pursuing Public Goals for Private Gain* 490 (2000)). The parties could provide such information either by waiting to submit actual coupon-redemption data or by proffering "expert testimony from a witness qualified to provide information on the actual value to the class members of coupons that are redeemed." 28 U.S.C. § 1712(d). Without information regarding the true value of redeemed coupons or cash alternatives, the Court cannot fully evaluate the benefits actually

received by class members and determine a fair attorneys' fee award.

## CONCLUSION

The Court should reject the proposed settlement in its current form. The terms of the proposed settlement oblige class members to accept coupons or cash of minimal value while providing class counsel with significant attorney's fees and costs. Under CAFA, such a proposed settlement is not fair or reasonable. At a minimum, the Court should postpone consideration of the attorneys' fee request until it can evaluate the coupon redemption rate and assess the true value secured for class members.

Counsel for the United States will be available for the Fairness Hearing in this matter, currently set for May 19, 2022, and request leave to participate.

May 18, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

GUSTAV W. EYLER
Director
Consumer Protection Branch

s/ Ellen Bowden McIntyre
ELLEN BOWDEN MCINTYRE
Trial Attorney
U.S. Department of Justice
Civil Division
Consumer Protection Branch
P.O. Box 386
Washington, D.C. 20044
202-541-7731
Ellen.Bowden.McIntyre@usdoj.gov

*Counsel for the United States*

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

s/ Melanie Speight
MELANIE SPEIGHT
Assistant U.S. Attorney
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201
Tel. (718) 254-7509
Melanie.Speight@usdoj.gov